The court will proceed to the fifth case. United States v. Mbaye. Mr. Baumgard. Good morning, Your Honors. How are you? Counsel. Your Honors, my name is Baumgard. I represent Mr. Mbaye, who was convicted of bank fraud and... Could you hold your mic up? Sure. Thanks. My name is... Can you hear me? Try to speak up. Get a little closer. My name is Baumgard. I represent Mr. Mbaye, who was convicted of bank fraud and wire fraud and sentenced to 36 months. He has no criminal background whatsoever. And what he was charged with having done, and convicted by a jury, is part of a huge mortgage fraud scheme, which no one suggests wasn't totally illegal. And his involvement in it was proven by... And he was convicted by the jury. But the two that testified against him had themselves been indicted along with him for those two charges. They were looking at 30 years apiece. One who testified against him, Mr. Rainey, had already been convicted on a prior scam identical to this. And by identical, I mean in the nature of it. And the government promised him that if he testified, quote, truthfully, unquote, and helped the government, that they would suggest one-third less than what the guidelines suggested. I assume that was the subject of cross-examination. It was, absolutely. And I don't have any comments about Judge Schader's doing anything improper at all. And the jury found him guilty. No question about that. The other person was promised that, on the same basis, that the government would not necessarily even ask for time for him. Just simply, they didn't state what would happen to him. But he was looking at 30, and he could have been given non-imprisonment. That's one issue. There's two other issues, and actually the second issue probably can be broken down into two things. And I should point out that Mr. Embiye has never suggested that he didn't do everything claimed, factually. It was his bank account that was used. He loaned it to a friend and let a friend use it. And he himself was involved in the transfer of the various monies to the various people. He's never suggested he didn't do that. The only thing he's suggested is he didn't have a clue. And whether he had a clue, he didn't know in any way that it was illegal what he was doing. I myself had never heard of the arcane practices of mortgage law, and didn't realize there were no Doc Tuesdays, which means you don't have to have any documentation or anything. Things were far beyond what I had a clue about. He was a school teacher, had been for I think 17 years, and up until trial was still teaching school at the Chicago Public Schools. He was not a real estate broker or a guru of any kind. The United States Sentencing Guidelines 3C1.1 were used as a basis for having him given two additional points for obstructing justice. On the grounds that the jury didn't believe him. There was nothing inconsistent whatsoever that he said. There was no conviction of perjury. There was nothing that he did other than tell what happened. The jury didn't believe him. I'm not suggesting that I know one way or another. I don't. But I do believe that he had a right to go to trial, tell his side of the story, and if he wasn't believed, suffer the consequences, which he's doing. But he should not be penalized for simply stating facts. Even if they were not believed by the jury, which they weren't. In addition, bank fraud as opposed to wire fraud is not probationable. Therefore, based on the identical facts, the government decided what his sentence cap would be. If he was charged with bank fraud, then he couldn't get probation. If he was charged with the same identical facts, with wire fraud, he could get probation. It could have been argued, and I think was, I honestly can't remember, that the judge didn't have a right to give him probation, and the judge didn't under the law. He could have given him time served. He could have given him something less. The fact that the government itself, the DOJ, the executive branch, determined the cap on the sentence conflicts with its duties. If they could have charged him with one thing and they charged him with another for a reason which would enhance or limit his, enhance his punishment, then they are acting as an executive branch doing something which is the nature of the judicial branch. So what are we to do with that argument? How does that tie into any of the issues you raised here? Okay. Because I don't see that. Okay, if he were given probation, if it were... Well, I understand what you're saying. Okay. What I'm saying is how does that relate to sufficiency of the evidence or... It does not relate to the sufficiency of the evidence. Or use of discretion in sentencing or the finding by the court that he committed perjury and you pick up two extra points. I'm not... The way it relates is the guidelines say that it's not intended, that is, what, 3C1.1 is not intended to punish somebody for exercising their constitutional right to go to trial and the denial of his guilt is not a basis for the applicability of that. I don't believe that anyone should be penalized for going to trial and telling what that person thought to be and believed to be. Not a crime. I mean, that is what mens rea is all about. And in this case, the jury didn't believe him. He should be sentenced. I'm not suggesting he shouldn't. But he should not be penalized for simply telling his version of what happened. He received 1.3% of whatever was scammed, and it was scammed. And he had no criminal history whatsoever. And I'm not suggesting he wasn't given a fair trial. What I'm suggesting is that the sentence should not have had in it the concept that you're penalized for going to trial and telling the truth or telling who knows what is the truth. The jury found him guilty, so he's guilty. There's no question he's guilty. But there are cases where someone's case has been reversed. And, gee, turns out that he was telling the truth. And I'm saying it may not be often, but it's certainly a right of every citizen to be able to go to trial and simply tell what happened. I have nothing further. Thank you. Thank you, Mr. Van Buren. Mr. Hammerman. If it may please the court, my name is Joel Hammerman. I represent the United States. As the defendant argued at trial, he argues in his appeal today, he claims that, not that he didn't take the actions that were alleged against him, but simply that he didn't know that this was a fraudulent endeavor.    He's not going to go to trial. He argued here today, as set forth in his brief, that effectively the government's evidence came down to two witnesses, the two cooperating defendants who testified at trial. That is simply A, not true, and B, even if it were true, it would not be a reason to reverse his conviction. This court has said on so many different occasions that it's not the province of the court to second-guess juries' credibility determinations. All of the alleged reasons that Mr. Baumgart puts forward that a jury could have questioned the credibility of the government's witnesses were obviously disclosed to counsel, subject to cross-examination. The jury believed those witnesses and so much more evidence that was presented to show the defendant's knowledge and intent. Just to go over a few of those things, the fact that in a four-month period, the defendant deposited four checks into his own corporate checking account and then withdrew those funds immediately, made payable to other individuals involved in the scheme. I think there were 14 checks written to other people and four to himself. For the mere use of his bank account, he was paid in excess of $82,000 over a four-month period. That obviously was evidence of his knowledge of the fraudulent nature of the scheme and his intent. The fact that, as witnesses testified, he signed a verification of employment and that there was also a payoff letter that not only identified him but had his phone number and that he was orally available to confirm the fraudulent nature of the scheme, evidence of his knowledge and intent. That the defendant engaged in the scheme after engaging in a comparable scheme with the same co-defendants where he personally purchased property, five properties in one period. I think he acquired over $1.4 million in debts. One of those properties had already gone into foreclosure by the time this scheme began, obviously evidence of his knowledge and intent. The fact that he lied to a postal inspector when first questioned in this case and that he then got on the stand and lied at trial, all evidence of his knowledge and intent. So there was overwhelming evidence that the defendant knew that this was a fraudulent scheme and that he was a willing participant in it. With respect to the enhancement that the district court applied under Section 3C1.1, the defendant gave false testimony. He was regarding a material matter, his knowledge and intent, and he did so with a willfulness. The court was very clear here that there were... It found his testimony to be perjurous. I think we cite pages 35, 36, and 46 of the sentencing transcript, and those quotes are contained within the government's brief, but I think are maybe best summarized when Judge Schader called it really perjurious testimony. The court identified specific statements. What does that have to do with the analysis, that it was really perjurious? The fact is that the court... When he didn't really identify the specific parts that were lies. But the court did, actually. It did so... It is. The first thing is that the court did say, look, there is perjury here. It's not just that the jury didn't simply believe him. The court addressed that claim and said, this was really perjurious testimony. No question. It's attached to the finding that the defendant testified that he wrote on these checks that were paid to co-schemers and a co-defendant, that the checks were paid for administrative duties. And when questioned about that on direct examination, he suggested that what he was really writing there at the time was the administrative duty he was performing in writing a check. And that was made very clear on cross-examination. And Judge Schader referred to that specific claim as just, I think the quote was, nonsense. And the fact that that was offered as an explanation on why he was kind of trying to dress up these checks that were being paid to co-defendants, which was nothing more than the redistribution of the fraudulent proceeds of this scheme, was obviously offered in an effort to lessen his evidence of his knowledge and intent. It was to draw that into question. And the court said that that testimony was, and the quote was, nonsense. The court also said that the suggestion that the defendant was, and I think the term Judge Schader used once again was hoodwinked, into participating in this scheme by allowing his company to be used by his purported friend who's charged co-defendant, was totally not believable. And that that testimony was also perjurious. And he says this on pages 36 of the sentencing transcript. Those two statements, he said, were lies and that they were obviously intended to mislead the jury and that was perjurious testimony. The court also identified pages 5 and 6 of the government's sentencing memorandum. The court said, you know, it was difficult for the court, the district courts, to reiterate them at the time of sentencing. And one of the arguments that was made on those pages of the government's sentencing memo is that the defendant thought that the payment of over $80,000 to deposit four checks and write 14 plus four more to himself was essentially a thank you for the use of his bank account was also a false statement. And that was the defendant's testimony at trial. Those were all lies. They were all intended to influence or affect an issue under determination. The defendant's knowledge and intent. And the court found that those lies were intentional and perjurious. And the ways in which he said that, and this court has said on a number of occasions that when applying Section 3C1.1's enhancement for perjury, it's best if the court analyzed the individual elements of perjury as to each lie. Judge Shader might not have done that, but he made it very clear that each one of those elements was in effect dealt with when he talked about the manner in which the testimony was dishonest. Is this enhancement always sought whenever the defendant testifies? No. Absolutely not. But in this case, the statements were so, I think it's fair to say, I'll use the court's words. They were so obvious, and they were really perjurious testimony on the core issue of his defense, the theory of his defense, that he simply did not realize that the checks that he was cashing, distributing, had been obtained from fraud. Because it went to that element, it was appropriately sought, and the court appropriately applied it. And Judge Shader was very clear that he really listened to the testimony here, and he really believed that this testimony was so contradictory to reality that it had to be, the enhancement had to be applied. We've got a substantially below guideline sentence here. Yes. 35 months? Or 36? It was effectively half of the guideline range. Just under half. Yeah. And the court also made it clear that the thing that was of the greatest weight, I mean, he looked at the letters that were supplied for the defendant, took account of all of the 3553A factors, and said that the thing that led him to impose that sentence, and he talked about it at some length during the sentencing proceeding, was the testimony that the defendant had offered in his own defense at the time of trial, required in the court's eyes, that sentence. And it was nevertheless a presumptively reasonable sentence, being less than half of the otherwise applicable guideline range, low end. Unless the court has any other questions? Thank you very much. Thank you, Mr. Hammer. Shirley. There were millions of dollars stolen. 1.3% is what Mr. Embiigh took from it, which is almost nothing. And this was a result of him helping a boyhood friend who was a broker himself. And what I'm suggesting is that not as your Honor asked me, what's this have to do with it? What's this have to do with the invalidity of the conclusion of the jury? It doesn't. What it has to do with, though, is the fact that what has just been presented to court makes it seem that, well, obviously, this was just clearly perjurious. And it wasn't at all. It was hard fought because, well, I'm not going to tell you he didn't do it because that's not my position. But Rainey, one of the only two people who testified against him, Rainey himself had already been convicted on another identical scam. And the government in no way suggested, well, gee, if he did that, he must have perjured himself. What's good for the goose, et cetera? Thank you. Thank you. Case is taken under advisement.